## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------- x
                     :

MONIQUE V.[1],              :            3:24CV1864(RMS)
        *Plaintiff,*    :

                     :

v.                      :

                     :

FRANK BISIGNANO,      :
COMMISSIONER OF SOCIAL  :
SECURITY[2],           :            JULY 21, 2025
        *Defendant.*    :

                     :
-------------------------------------------------------- x

### <u>RULING ON THE PLAINTIFF'S MOTION TO REMAND AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER</u>

        This is an administrative appeal following the denial of the plaintiff's applications for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"). It is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

        The plaintiff moves for an order remanding the decision of the Commissioner of the Social Security Administration (the "Commissioner"). (Doc. No. 17). The Commissioner, in turn, has moved for an order affirming his decision. (Doc No. 19). For the following reasons, the plaintiff's motion for an order remanding the ALJ's decision is **GRANTED**, and the Commissioner's motion for an order affirming that decision is **DENIED**.

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, in opinions issued in cases filed pursuant to Section 205(g) of the Act, 42 U.S.C. § 405(g), this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

[2] When the plaintiff filed this action, she named then-Commissioner of the Social Security Administration, Martin O'Malley, as the defendant. (*See* Doc. No. 1). On November 29, 2024, O'Malley left the agency. Frank Bisignano has since been appointed as the Commissioner of the Social Security Administration. As such, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Martin O'Malley as the defendant in this matter.

## I.    **PROCEDURAL HISTORY**

On May 18, 2023, the plaintiff applied for DIB benefits, claiming that she had been disabled since February 18, 2022, due to gastroesophageal reflux disease, osteoarthritis in her right knee, and hypertension.  (Doc. No. 13, Certified Transcript of Administrative Proceedings, dated 12/30/24 ["Tr."] at 66, 172–74).  The plaintiff's application was denied initially and upon reconsideration.  (Tr. 89, 97).  On April 12, 2024, Administrative Law Judge ("ALJ") Deirdre Horton held a hearing during which the plaintiff and a vocational expert testified.  (Tr. 150).  On May 17, 2024, the ALJ issued an unfavorable decision denying the plaintiff DIB benefits.  (Tr. 26–34).  The Appeals Council denied the plaintiff's request for review in October 2024, thereby making the ALJ's decision the final decision of the Commissioner.  (Tr. 1–7).

The plaintiff filed her complaint in this pending action on November 25, 2024.  (Doc. No. 1).  The following day, the parties consented to the jurisdiction of a United States Magistrate Judge, and the case was transferred to the undersigned.  (Doc. Nos. 10, 11).  On February 7, 2025, the plaintiff filed her Motion to Reverse the Decision of the Commissioner with a memorandum of law.  (Doc. Nos. 17, 18).  The Commissioner filed his Motion to Affirm and memorandum of law on March 10, 2025.  (Doc. No. 19).  The plaintiff filed a reply fourteen days later.  (Doc. No. 20).

## II.    **FACTUAL BACKGROUND**

The Court presumes the parties' familiarity with the plaintiff's medical history, which is thoroughly discussed in the parties' statements of material facts.  (*See* Doc. No. 18 at 1–5; Doc. No. 19 at 2).  The Court cites only the portions of the record that are necessary to explain this decision.

A.    <u>**The Plaintiff's Hearing Testimony**</u>

On April 12, 2024, the plaintiff appeared for a hearing before the ALJ.  (Tr. 33–79).  Her counsel, John O'Donnell, was present and confirmed that the record was complete.  (Tr. 36).

The plaintiff was asked to testify about her work history.  She testified that she had not worked since February 2022.  (Tr. 59).  Her last job was as a school bus monitor, a part time job that she held for three years and which required her to take care of children on the bus by helping them with their seatbelts, keeping them in their seats, and safely getting them to their teachers and parents.  (Tr. 60).  Before this role, the plaintiff worked for American Airlines as a customer service agent where she spent the entire day standing but did not have any lifting or carrying obligations.  (Tr. 60–61).  She also worked as a home health aide before her customer service job, and in this capacity she had to lift and carry her clients, do their household chores, and push them in wheelchairs as needed.  (Tr. 61).

The ALJ and the plaintiff's attorney elicited testimony about the plaintiff's physical pain.  The plaintiff testified about experiencing pain in both knees and both shoulders and in her back from her head down to her kidneys.  (Tr. 49).  She testified that, for the past six or seven years, she had been using a cane to walk when she experienced knee pain, which occurred about three times a week.  (Tr. 47–48).  The cold weather impacted her pain.  (Tr. 50).  In addition, the plaintiff suffered from shoulder pain, finger pain, and carpal tunnel that caused pain in her wrist and hand.  (Tr. 56).  To alleviate the pain, her providers proscribed her Clofenax and Ibuprofen, but the pain always returned.  (Tr. 50).  While she used to receive physical therapy on her knee and shoulder, she stopped because her insurance would not cover it anymore.  (Tr. 50–51).

The plaintiff also testified about head pain resulting from a tumor.  She stated that she felt "like something is crawling . . . inside my head from time to time." (Tr. 57).  Despite having surgery on March 22, 2024, the plaintiff still had pain every morning and night.  (Tr. 58).

In addition, the plaintiff's attorney asked about her postural limitations.  The plaintiff testified that she could sit in a chair with a pillow (used to alleviate back pain) for about one hour, but then she would have to stand up and/or walk.  (Tr. 51).  The act of standing often caused her to scream in pain.  (Tr. 52).  Once standing, the plaintiff could only stand without moving for about 30 minutes; yet when walking, the plaintiff would need to stop after about five blocks.  (*Id.*).  The plaintiff testified that going up stairs was easier than going down stairs, and when doing the latter she needed to hold tightly onto the rails.  (*Id.*).  About twice daily, the plaintiff would lay down for 40 to 60 minutes due to back and kidney pain.  (Tr. 52–53).  She testified that, to bend, she needed to hold on to a chair or her cane.  (Tr. 53).  She also testified that she could carry or lift ten pounds comfortably.  (*Id.*).  Finally, the plaintiff testified that she had difficulty reaching laterally but not overhead or in front.  (Tr. 54).

The plaintiff's attorney then asked the plaintiff about her ability to complete household tasks.  (Tr. 47).  The plaintiff testified that she lived with her niece, her niece's husband, and their two children.  (Tr. 45).  Because of the plaintiff's pain in her knee, back, and shoulders, her niece helped her shower and zip her clothes in the back.  (Tr. 45, 54).  She also testified that her niece cooked, cleaned, did the dishes when the plaintiff experienced pain, mopped, vacuumed, swept, and did the laundry around the house, although the plaintiff could help her and would sweep her bedroom.  (Tr. 54–55).  The plaintiff did not drive and took the bus without difficulty.  (Tr. 46–47).  For groceries, the plaintiff typically watched the children while her niece went shopping.  (Tr. 55).

B.     <u>**The Vocational Expert's Testimony**</u>

The vocational expert, Lynn Paulson, testified about the plaintiff's work background and possible substantial gainful activity. She first stated that the plaintiff's past jobs were a school bus monitor, ticket agent, and home health aide. (Tr. 62). The ALJ presented several hypotheticals and asked the vocational expert to opine about the possible substantial gainful activity for an individual with the same age, education, and work background. (*Id.*).

First, the ALJ asked the vocational expert to testify about available jobs if the hypothetical person had limitations of (1) light work; (2) occasional ramps and stairs but no ladders, ropes or scaffolds; (3) occasional balancing, stooping, kneeling, crouching, and crawling; and (4) frequent reaching, handling, and fingering. (Tr. 62–63). The vocational expert testified that a person in this circumstance could perform the past work of a ticket agent. (Tr. 63). She also clarified that the ticket agent role could still be performed if the individual was further limited to sedentary work but the hypothetical otherwise remained the same. (*Id.*).

The ALJ then asked whether the vocational expert's answer would be different if the individual also required a cane to ambulate. The vocational expert testified: "That would certainly affect the way she performed it. It wouldn't affect it if she was seated at a desk as generally performed." (Tr. 63).

Lastly, the vocational expert testified about an individual's ability to be off-task or absent. She testified that a ticket agent would not be afforded off-task time outside of the scheduled breaks. (*Id.*). She also testified that an individual would not be permitted to be absent more than once per month, including late arrivals or early departures. (*Id.*).

C.    **Medical Evidence**

The medical records contain evidence from several sources: Yale New Haven Health's Emergency Department on May 5, 2023 (Tr. 314–80); Yale New Haven Health's outpatient care from September 28, 2022 through October 11, 2023 (Tr. 381–534, 595–660); and Fair Haven Community Health Care from September 28, 2022 through January 25, 2024 (Tr. 535–94).

The ALJ determined the plaintiff had two severe impairments: osteoarthritis of the right knee and hypertension. (Tr. 29). In addition, the ALJ noted the plaintiff suffered from COVID-19 and from a scalp lesion in in May 2023, but determined that these diagnoses constituted non-severe impairments because they lasted less than twelve months. (Tr. 29). The ALJ also determined that the plaintiff's back pain, shoulder pain, and carpal tunnel syndrome were not medically determinable impairments "due to a lack of objective evidence." (*Id.*).

The record includes treatment for high blood pressure and hypertension since September 28, 2022, the date when the plaintiff established care with Daijsia Bubb, A.P.R.N., F.N.P.-B.C.[3] (Tr. 421–24, 535–38). She had follow-up appointments regarding her elevated blood pressure on October 12 and 26, 2022, followed by medication and primary care management. (*See, e.g.,* Tr. 419–23, 507, 565–67, 573–81).

The record also includes treatment for pain in the plaintiff's back, shoulder, knee, and hand. On October 27, 2022, the plaintiff visited Dr. John McDonagh, M.D., with complaints of pain in her back, shoulder, and knee. (Tr. 417–19, 538–41). She returned on January 27, 2023, complaining about pain in her right shoulder, back, and joints. (Tr. 404–07, 547–51). Specifically, the plaintiff complained that she had upper back pain that was exacerbated when washing dishes, and Dr. McDonagh noted that injections alleviated her joint pain only temporarily. (*Id.*). In

---

[3] At this visit, her diagnoses included, in relevant part, hypertension and chronic right knee pain. (Tr. 424).

February 2023, the plaintiff received x-rays of her thoracic spine, right knee and right hand.  (Tr. 427, 463–71).  Dr. McDonagh noted that her hand x-ray was normal but her back x-ray showed signs of arthritis, which could be improved with physical therapy.  (Tr. 402, 408).  On April 5, 2023, the plaintiff visited Nurse Bubb, regarding pain in her right shoulder and back.  (Tr. 401, 551–53).  She had a follow-up appointment on June 5, 2023.  (Tr. 497–501, 561–64).  The record documents physical therapy treatment from April through September 2023.[4]  (Tr. 388–401, 501–07, 577).

### D.    <u>Medical Experts</u>

The record contains medical opinions from five medical experts.  Two state agency reviewers evaluated the plaintiff's medical records: Audrey Wooten, M.D. at the initial level; and Gary Smith, M.D. at the reconsideration level.  (Tr. 72, 82).  Three treating providers—Dr. McDonagh, Nurse Bubb, and Authurine Hannam-Davis, A.P.R.N.—also submitted treating source statements regarding the plaintiff's pain and physical limitations.  (Tr. 296–313, 661–68).

### 1.    Initial Stage

Dr. Wooten considered the plaintiff's physical health at the initial stage.  At this stage, the available evidence included seven appointments between September 2022 and April 2023.  (Tr. 67–68).

With respect to the plaintiff's residual functional capacity ("RFC"), Dr. Wooten concluded that the plaintiff was restricted to lifting and/or carrying twenty pounds occasionally and ten pounds frequently; had no limitations for pushing and pulling in upper and lower extremities; could only stand and/or walk for six hours in an eight-hour workday; could sit for six hours in an eight-

---

[4] Specifically, the medical record contains physical therapy records from April 14, April 27, May 2, May 27, June 6, July 6, July 20, 2023, and July 27, 2023.  (Tr. 388–401, 501–07).  The Court notes there may be missing records, as Nurse Bubb noted the plaintiff continued to go to physical therapy through September 2023.  (Tr. 577).

hour workday; could never climb ladders, ropes, scaffolds; could occasionally climb ramps and stairs, kneel, crouch, and crawl; and could frequently balance and stoop. (Tr. 69). When prompted to cite specific facts on which this assessment was based, Dr. Wooten stated, "djd knee, ddd tspine." (Tr. 70). Dr. Wooten also opined the plaintiff did not have manipulative, visual, communicative or environmental limitations. (*Id.*). In the section entitled "RFC Additional Explanation," (*id.*), Dr. Wooten copy-and-pasted her Summary of Evidence, (Tr. 67–68).[5] Dr. Wooten concluded with the following description:

> Conclusion: MER is c/w HTN (no EOD), GERD (managed with meds), anddjd r knee and ddd tspine. Careful consideration has been given to the claimant's statements regarding alleged symptoms and their effect on functioning. An RFC has been developed based on the totality of available information. The RFC is consistent with the objective data, and is felt to be within the work abilities of the clmt.

(Tr. 70).

### 2. Reconsideration Stage

At the reconsideration stage, Dr. Smith reviewed the same evidence available to Dr. Wooten and additional evidence from May through July 2023. (Tr. 77–78). Dr. Smith arrived at the exact same RFC as Dr. Wooten. (Tr. 79). In the "RFC Additional Explanation" section, Dr. Smith copy-and-pasted Dr. Wooten's Summary of Evidence from September 2022 through April 2023, and he added more to his summary of the additional evidence from May through July 2023. (Tr. 79–81). Dr. Smith's conclusion was as follows: "The relevant MER and ADL's/Function reports were reviewed at the time of reconsideration. Based on this review, the claimant should be capable of functioning within the parameters of this RFC. These findings complete the medical portion of the disability determination." (Tr. 78).

---

[5] The only difference is that Dr. Wooten added one sentence to her summary of a medical visit on October 27, 2022. (Tr. 67–70) (adding "Musculoskeletal: Comments: Knees: no warmth/erythema/effusion/ligamentous laxity/extensor mech intact; +TTP greates [sic] at medial joint line FROM hips b/l.")

### 3.    Other Medical Opinions

In addition to the state agency consultants, the medical record contains information from three treating providers: Dr. McDonagh, Nurse Bubb, and Nurse Hannam-Davis.

On April 6, 2023, Dr. McDonagh completed a Treating Source Statement form, which prompted him to answer questions about the plaintiff's symptoms, need for off-task behavior, physical limitations, and environmental limitations.  (Tr. 296–304).   The form included a combination of short answers and check boxes.  For the former, Dr. McDonagh's handwriting is illegible.  For the latter, Dr. McDonagh opined that the plaintiff could lift and carry less-than-ten pounds continuously, ten pounds frequently, and twenty pounds occasionally; sit for seven hours a day, stand for one hour a day, and walk for one hour a day; occasionally reach, handle, finger, feel, or push/pull with both her right and left arms and hands (with the sole exception that she could only *rarely* reach overhead with her right hand); frequently use both feet; never climb ladders and scaffolds; rarely kneel, crouch, and crawl; and occasionally climb stairs and ramps, balance, stoop, and rotate head and neck.  (Tr. 298–99).  Dr. McDonagh also opined the plaintiff would need to be absent four days per month and would need to be off task more than 25% of her workday.  (Tr. 296).

The following week, on April 13, 2023, Nurse Bubb filled out a similar Treating Source Statement form.  Nurse Bubb indicated she had been seeing the plaintiff every two to three months for seven months and was treating the plaintiff for chronic right shoulder pain as well as chronic thoracic back pain and osteoarthritis.  (Tr. 305).  She determined the plaintiff could lift and carry less-than-ten pounds occasionally; sit, stand and walk for less than one hour per day; occasionally reach, push, and pull with her left arm/hand; frequently handle, finger, and feel with her left arm/hand; occasionally finger and feel but rarely reach, handle, push, and pull with her right hand;

occasionally use foot controls with each foot; occasionally climb stairs and ramps, and rotate head and neck; rarely climb ladders and scaffolds and stoop; and never balance, kneel, crouch, and crawl. (Tr. 305–08). Similar to Dr. McDonagh, Nurse Bubb opined that the plaintiff would need to be off task more than 25% of the work day, could only maintain attention and concentration for less than 30 minutes per day, and would need to be absent five or more days per month. (*Id.*).

On February 26, 2024, Nurse Hannam-Davis provided her medical opinion on a similar form after having treated the plaintiff's thoracic back pain, chronic pain in bilateral knee, and lower back for slightly more than one month. (Tr. 661). With respect to the plaintiff's limitations, Nurse Hannam-Davis opined the plaintiff could lift and carry less than ten pounds frequently, ten pounds occasionally, twenty pounds rarely, and never fifty or more pounds; sit for five hours per day; stand and walk for one hour per day; occasionally reach with her right arm/hand but otherwise frequently reach, handle, finger, feel, push, and pull with her right and left arms/hands; rarely balance, stoop, or kneel; and frequently crawl and rotate head and/or neck. (Tr. 662). Nurse Hannam-Davis noted the plaintiff required a cane and would need to lie down once daily for two hours at a time. (Tr. 663). Lastly, Nurse Hannam-Davis opined that the plaintiff would need to be off task more than 25% of the work day, could only maintain attention and concentration for less than fifteen minutes per day, and would need to be absent five or more days per month. (Tr. 661).

## III.   **THE ALJ'S DECISION**

The ALJ must follow a five-step evaluation process as promulgated by the Commissioner to determine whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520(a).[6]   In this case, the ALJ determined that the plaintiff met the insured status

---

[6] An ALJ determines a claimant's disability using a five-step analysis. *See* 20 C.F.R. § 404.1520. First, an ALJ must determine whether a claimant is currently working. *See* 20 C.F.R. § 404.1520(a)(4)(i). If a

requirements under the Act through December 31, 2026.  (Tr. 28).  At step one, the ALJ found that

the plaintiff had not engaged in substantial gainful activity since her alleged onset date of February

18, 2022, a period exceeding the twelve-month statutory requirement.   (*Id.*).

At step two, the ALJ determined that the plaintiff had the following severe impairments:

osteoarthritis of the right knee and hypertension.  (Tr. 29).

At step three, the ALJ found that the plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr.

29–30).  In doing so, the ALJ considered Listing 1.18 (abnormality of a major joint in any

extremity). *See* 20 C.F.R. part 404, Subpart P, Appendix 1.

Next, the ALJ formulated the plaintiff's RFC.  A plaintiff's RFC is the most they can do

despite their impairments and is determined by assessing all the relevant evidence.  20 C.F.R. §§

404.1545(a)(1).  The ALJ determined the plaintiff had the RFC to perform light work with the

following additional restrictions: "occasional climbing of ramps and stairs and no climbing of

ladders, ropes, and scaffolds;" and "no more than frequent balancing and stooping;" and "no more

than occasional kneeling, crouching, and crawling."  (Tr. 30).

---

claimant is currently employed, then the claim is denied.  *Id.*  If a claimant is not working, then an ALJ
must make a finding as to the existence of a severe mental or physical impairment. If none exists, then the
claim is also denied.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).  If a claimant is found to have a severe impairment,
then the third step is to compare the claimant's impairment with those in 20 C.F.R. Part 404, Subpart P,
Appendix 1 of the Regulations ("the Listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Bowen v. Yuckert*, 482
U.S. 137, 141 (1987); *Balsamo v. Chater*, 142 F.3d 75, 79-80 (2d Cir. 1998).  If a claimant's impairment
meets or equals one of the impairments in the Listings, then the claimant is automatically considered
disabled.  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Balsamo*, 142 F.3d at 80.  If a claimant's impairment
does not meet or equal one of the listed impairments, then the claimant must show at the fourth step that
she cannot perform her former work.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  If a claimant shows that she
cannot perform her former work, then the burden shifts to the Commissioner to show at step five that the
claimant can perform other gainful work.  *See Balsamo*, 142 F.3d at 80 (citations omitted).  Accordingly, a
claimant is entitled to receive disability benefits only if she shows that she cannot perform her former
employment, and the Commissioner fails to show that the claimant can perform alternate gainful
employment.  *See* 20 C.F.R. § 404.1520(a)(4)(v); *see also Balsamo*, 142 F.3d at 80 (citations omitted).

At step four, based on the testimony of the vocational expert, the ALJ found that the plaintiff could perform her past relevant work as a ticket agent.  (Tr. 33).  Having reached this decision, the ALJ found that plaintiff was not disabled and did not continue to step five.  (Tr. 33–34).

## IV.    <u>STANDARD OF REVIEW</u>

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  The Court's function is to first ascertain whether the ALJ applied the correct legal principles in reaching their conclusion, and then whether the decision is supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Substantial evidence means more than a scintilla, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 400 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 229 (1938)).  Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  "Such a deferential standard, however, is not applied to the Commissioner's conclusions of law."  *Muntz v. Astrue*, 540 F. Supp. 2d 411, 418 (W.D.N.Y. Mar. 17, 2008) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).  "This court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled."  *Id*.  "Where there is a reasonable basis for doubt

whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## V.    DISCUSSION

The sole issue on appeal is whether the ALJ erred in evaluating the medical opinion evidence. The record contains five medical opinions: two from state agency consultants, Dr. Wooten at the initial stage and Dr. Smith at the reconsideration stage; and three from treating providers, Dr. McDonagh, Nurse Bubb, and Nurse Hannam-Davis.

The parties disagree as to whether the ALJ's assessment of the five medical opinions constitutes reversible error. The plaintiff argues that the ALJ's assessments of each medical opinion "was inadequate, and as a result so was her evaluation of Plaintiff's RFC." (Doc. No. 18 at 6). The Commissioner disagrees, contending that the ALJ appropriately evaluated the record as a whole, including treatment notes, evidence of the plaintiff's ability to perform daily activities, and the medical opinion evidence. (Doc. No. 19-1 at 6). In her reply, the plaintiff posits that the Commissioner fails to appreciate the "relationship between medical opinion and substantial evidence" and maintains that the ALJ's failure to weigh the medical opinion evidence according to the applicable regulations prevents meaningful review and requires remand. (Doc. No. 20 at 1).

### A.    Applicable Legal Principles

A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions," including, in relevant part, a plaintiff's "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration,

persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."  20 C.F.R. § 404.1513(a)(2)(i).

Section 404.1520c of Title 20 of the Code of Federal Regulations sets forth the parameters an ALJ must follow when evaluating the persuasiveness of a medical opinion or prior administrative medical finding.  The Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ evaluates the medical opinions by applying the five factors listed in 20 C.F.R. §§ 404.1520c(c)(1)–(c)(5).  These factors are: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) any other factors.

Of these factors, supportability and consistency are the most important, and an ALJ must explicitly articulate how she considered them.  *See* 20 C.F.R. § 404.1520c(b)(2).  When considering supportability, an ALJ is expected to look to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)."  20 C.F.R. § 404.1520c(c)(1).  The consistency factor relates to an opinion's consistency with other evidence in the record.  "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  An ALJ may explain how she considered the other three factors, but generally she is not required to do so.  *See* 20 C.F.R. § 404.1520c(b)(2).

### B.    <u>State Agency Consultants</u>

The ALJ assessed the state agency consultants in the same two-sentence paragraph.  In the first sentence, the ALJ simply concluded that both state agency consultant opinions—that the

plaintiff should be restricted to light work with certain postural limitations—were persuasive. (Tr. 32). In the second sentence, the ALJ stated: "The finding for light work with postural limitations is consistent with the claimant's history of knee osteoarthritis, with conservative treatment (Exhibits 4F/38, 85; 5F/18-20; 7F/42, 47)." (*Id.*).

The plaintiff argues that the ALJ's evaluation of the state agency consultants warrants remand. She contends that the ALJ's entire justification for finding these consultants to be persuasive is set forth in one conclusory sentence, which gives cursory treatment to whether the opinions are consistent and fails entirely to explain supportability. (Doc. No. 18 at 7–8). She points out that the state agency consultants did not have any records post-dating July 27, 2023 and maintains that their explanations of the plaintiff's limitations were conclusory and did not detail what evidence supported the RFC.[7]

The defendant disagrees. To start, the defendant argues the treatment notes support the ALJ's finding and cites the excerpts from the record that the ALJ also cited. (Doc. No. 19-1 at 11). From there, the defendant discusses other treatment notes in the record that the state agency consultants summarized and maintains these summaries show the consultants' opinions did not "border on non-existent." (*Id.* at 12). The defendant next appears to concede the ALJ did not explain the supportability factor, but he argues that "because the ALJ relied on the same evidence to support her decision that Dr. Wooten and Dr. Smith relied upon to support their assessments, it can be gleaned that the ALJ found their opinions well-supported." (*Id.* at 13). Lastly, the defendant contends a consultant's opinion can still be persuasive even if the consultant lacked complete medical records and/or did not examine the plaintiff. (*Id.* at 13–14).

---

[7] Specifically, Dr. Smith stated: "The relevant MER and ADL's/Function reports were reviewed at the time of reconsideration. Based on this review, the claimant should be capable of functioning within the parameters of this RFC." (Tr. 80).

Section 404.1520c requires the ALJ to adequately explain the supportability and consistency factors. Courts within this circuit routinely find legal error when the ALJ fails to meaningfully discuss or explain the factors with specificity. *See, e.g., Nancy S. v. Kijakazi*, 3:22-CV-00100 (SVN), 2023 WL 2628973, at *4 (D. Conn. Mar. 24, 2023) (finding the ALJ's two-sentence analysis was conclusory and "fails to appropriately consider either the supportability or consistency of the opinion"); *Matthew L. v. King*, No. 24-CV-0275 (RFT), 2025 WL 405812, at *1 (S.D.N.Y. Feb. 5, 2025) ("Beyond merely considering the supportability and consistency of medical source opinions, the ALJ must explain how he analyzed those factors.") (citing cases). Indeed, during the rule-making process, the Social Security Administration explained the purpose of the articulation requirement: it "will allow a subsequent reviewer or a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review our final decision." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5857 (Jan. 18, 2017).

The Court finds the ALJ committed legal error, because the ALJ's assessment falls well below the requirement to explain the supportability factor. Section 404.1520c(c)(1) requires the ALJ to explain whether and/or how each state agency consultant supported *their* opinions with objective medical evidence. *See* 20 C.F.R. § 404.1520c(c)(1). The ALJ completely failed to address this factor at all. While the ALJ cited seven pages of the medical record, she did so only to note the state agency consultants' medical opinions were consistent with the *overall* record. A general reference to the overall record does not satisfy the supportability factor. *See, e.g., Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("It is not sufficient to cite to some objective medical evidence in the record and simply conclude that an opinion is consistent with other evidence in the file rendering it persuasive.") (internal quotation marks removed); *Kyle Paul S. v.*

*Kijakazi*, No. 3:20-CV-01662 (AVC), 2021 WL 6805715, at *8 (D. Conn. Nov. 16, 2021) ("[T]he ALJ found that the opinions of the State agency consultants are persuasive because '[t]hese assessments take into account all of the treatment records.' This explanation falls short of explaining how he considered supportability and consistency in determining the persuasiveness of the prior administrative findings, as he must under 20 C.F.R. § 404.1520c(b)(2)."); *Acosta Cuevas v. Comm'r Soc. Sec.*, 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021) (finding legal error when "[n]owhere in the ALJ's decision does she explain, as the new regulations require, what the respective CEs' used to support their opinions and reach their ultimate conclusions"); *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-cv-1718-FPG, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (finding legal error where "the ALJ did not examine what Doctors McGovern and Beaver used to support their opinions and reach their ultimate conclusions") (internal quotation marks removed); *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *6 (D. Conn. June 21, 2022) (explaining a "conclusory statement is insufficient to satisfy the articulation requirements of Section 416.920c(b)(2)"). Accordingly, the ALJ's failure to address the supportability factor is legal error.

The plaintiff does not challenge the ALJ's consistency assessment. Under the consistency factor, an ALJ must compare the medical opinion with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). While the Court makes no conclusions on this appeal about the consistency factor, it notes the ALJ's finding—that the state agency consultants' RFC is "consistent with" the plaintiff's history of knee osteoarthritis (Tr. 32)—does not compare the five medical sources at all, as is required by the consistency factor under § 404.1520c(c)(2). Instead, the sentence is merely a conclusory statement about part of the objective medical evidence, but it offers no explanation about the record as a whole. As explained

in the preceding paragraph, such a conclusory sentence fails to satisfy the supportability factor. 20 C.F.R. § 404.1520c(c)(1). By misusing consistency and completely leaving out supportability, the ALJ has given short shrift to both factors.

As the Second Circuit explained in a summary order, procedural error requires remand unless "a searching review of the record assures us that the substance of the regulation was not traversed." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. 2022) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (citation modified). Lower courts have drawn the same conclusion when the ALJ fails to adequately explain the supportability and/or consistency factors. *See, e.g., Lopez v. Berryhill*, 448 F. Supp. 3d 328, 341 (S.D.N.Y. 2020) ("[A]n ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case."); *Jackson*, 588 F. Supp. 3d at 587 ("Remand is appropriate when the ALJ failed to apply the correct legal standard, including adequately considering and applying the new regulatory factors."); *Matthew L.*, No. 2025 WL 405812, at *1 ("Under the current regulations, an ALJ's failure to properly consider and apply the consistency and supportability factors may be a basis for remand.").

This case must be remanded, because the ALJ's legal error is not harmless. Here, the record indicates that the plaintiff has chronic pain and/or osteoarthritis in her back, shoulder, arm, hand, knee, and joints, (*see, e.g.,* Tr. 50, 405, 465, 485); requires assistance getting dressed, (Tr. 50, 54); and relies on family members to do household chores, (Tr. 54–55, 417, 498). Furthermore, as the plaintiff points out, (Doc. No. 18 at 8–9), the state agency consultants did not have the benefit of reviewing the entire record, (*See* Tr. 67–68, 77–78). Nor did they explain how they arrived at their RFC findings, other than merely listing the evidence they considered and stating in conclusory fashion that they considered such evidence. (*See* Tr. 70, 80). On the other hand, the

record includes medical opinions from three different treating providers, each who determined that the plaintiff suffered from limitations (including her need to be off-task and absent) that, according to the vocational expert, would prevent her ability to work. (*Compare* Tr. 296–313, 661–68; *to* Tr. 62–64). The Court also notes that the evidence contains detailed physical therapy records, which may be considered but were not cited by the ALJ. *See* 20 C.F.R. § 404.1513(a). For these reasons, the Court concludes a proper application of the legal standard could have led to more than one outcome, and so this case must be remanded. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). On remand, the parties should consider whether it would be appropriate for state agency consultants to re-evaluate the record and re-explain their findings beyond summarizing evidence and using conclusory statements.

### C.    <u>Treating Providers</u>

As with the state agency consultants, the parties disagree about whether the ALJ committed reversible error when she determined that each of the three treating source statements were "not persuasive." For each treating provider, the plaintiff argues the ALJ failed to adequately explain the supportability and consistency factors. (Doc. No. 18 at 9–16). In summary, the plaintiff points to objective medical evidence that supports each provider's findings and maintains that the three treating providers are largely consistent with each other insofar as they assigned the plaintiff "significant reductions in standing and walking" and gave off-task and absentee limitations that would, according to the vocational expert, preclude work. (*Id.*). The defendant similarly cites to objective medical evidence and compares the providers' findings, but he reaches the opposite conclusion about the persuasiveness of each provider's opinion. (Doc. No. 19-1 at 14–20).

This Court will not address whether the ALJ committed procedural error in her explanation of her findings as to each treating provider, as the case is remanded on other grounds. However,

it is noteworthy that the medical record contains five medical opinions that fall into two groups, and it appears the ALJ may have held these two groups to different standards. On the one hand, there are three medical opinions from providers who personally treated the plaintiff whose findings about the plaintiff's ability to stand, walk, be on-task, and be present at work all suggest, based on the vocational expert testimony, that the plaintiff would not be able to work. In finding these opinions to be unpersuasive, the ALJ focused not on consistency, but on the slight variations of the specific findings, variations that are reasonable given that the providers treated the plaintiff for different medical conditions and at different times. On the other hand, the ALJ found the two non-treating medical consultants persuasive, but did so in cursory fashion and without properly analyzing their supportability or consistency. (Tr. 32–33, 70, 78).

On remand, the ALJ should re-assess the opinions of the treating providers and properly explain—with citations to, and discussions about, the specific medical evidence—the supportability and consistency factors, as set forth above. The Court reiterates that vague references to objective medical evidence is not enough to satisfy either factor. *See Jackson*, 588 F. Supp. 3d at 585–86; *Lisa T.*, 2022 WL 2207613, at *6–8. Instead, the ALJ must "identify evidence that supports [her] conclusion and build an accurate and logical bridge from the evidence to [her] conclusion to enable meaningful review." *Gina B. v. Comm'r of Soc. Sec.*, No. 3:23-CV-00769-RAR, 2024 WL 4262640, at *6 (D. Conn. Sept. 23, 2024) ("In analyzing medical opinion evidence, an ALJ is required to both identify evidence that supports his conclusion and build an accurate and logical bridge from the evidence to her conclusion to enable meaningful review.") (citation modified).

**VI.**    **CONCLUSION**

The plaintiff's motion for an order remanding the Commissioner's decision (Doc. No. 17) is **GRANTED** and the Commissioner's motion to affirm that decision (Doc. No. 19) is **DENIED**. The Clerk shall enter judgment and remand this matter to the Commissioner for further administrative proceedings consistent with this decision.  The Clerk is respectfully requested to close this case.

This is not a Recommended Ruling. The consent of the parties permits this Magistrate Judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals from this judgment can be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

It is so ordered this 21st day of July, 2025, at New Haven, Connecticut.

___/s Robert M. Spector___ _____ _
Robert M. Spector,
United States Magistrate Judge

21